# HARVEY B. LEPER

## *v.*

### EDWARD F. PULSIFER.

TAXES — *assessment of — penalties for fraudulent return of property.* An assessor for taxes, being of opinion that a resident of his township had made a false return both of his own personal property and of that belonging to an unsettled estate of which he was executor, largely increased the valuations, and then affixed the penalty provided by the statute for a false return, by doubling the increased valuations. The owner of the property was notified of these proceedings, and of the time and place of meeting of the board for the correction of lists. He appeared before the board, but refused to make the affidavit required by the statute as to the true value of his property. The board did not interfere, and he then filed a bill to enjoin the collection of the taxes, but did not aver in his bill, nor prove, upon the hearing, that the valuation affixed by the assessor was too high. *Held,* that the action of the officer, proceeding within the scope of his official authority, must be presumed to have been correct, until the contrary is duly alleged and proven — that this was not a case calling for the interference of the court, so far as related to the increased valuation of the personal property, whether belonging to the complainant in his

own right or to the estate, nor would the court interfere with the penalty affixed to the personal property held by the complainant in his own right; but the assessor had no power, under the statute, to double the true valuation of the property belonging to the estate, in consequence of fraud in the executor, nor had he any right to double the valuation of any real estate which might be listed in the name of the complainant.

WRIT OF ERROR to the Circuit Court of Putnam county; the Hon. SAMUEL L. RICHMOND, Judge, presiding.

This was a bill for an injunction, filed at the March term, 1862, of the Circuit Court of Putnam county, by defendant in error, against plaintiff in error, to restrain him from the collection of certain taxes, in the township of Hennepin. The case was heard upon bill, answer, replication and proof, and the injunction being partially allowed as prayed, the defendant below sued out his writ of error. The facts are fully stated in the opinion of the court.

Mr. T. M. SHAW for the plaintiff in error, filed the following brief:

1. There was no equity on the face of the bill, and the court should have dissolved the injunction on motion.

(A) Complainant did not show or allege in his bill the value of his taxable property, and without such showing he could obtain no relief.

(B) He had an adequate remedy at law, and shows no sufficient excuse for not pursuing it. Stat., Ill., 1056, Sec. 32 and 33.

The time of the meeting of the board of equalization is changed, and assessor is required to post notices of such meeting. Haine's Township organization, 1861, p. 59, Sec. 11, 12 and 13; *Hough* v. *Hastings*, 18 Ill., 312.

(C) Complainant gave in a false and fraudulent list, as decided by the assessor, whose decision was final, and it was the duty of assessor to assess his property at double its value as a penalty. If he failed to impose the penalty, he was liable to a fine of $50. Stat., Ill., 1050, Sec. 8.

(D) He refused to list his stocks in Hennepin Seminary, and the bill does not show that the premises were not " leased or otherwise used with a view to profit," and the presumption is that they were, in the absence of any allegation in the bill denying it. He cannot plead ignorance of the law; and this refusal warranted and required the assessor to impose the penalty. Stat. Ill., 1030, Sec. 3.

(E) It was the duty of the assessor to assess his "*property*" at double its value. This would include real property, and if there could be any doubt of the meaning of the word, see Stat. Ill., 1047, end of Sec. 2.

(F) Assessor had the right to make the assessment from his own knowledge, and from reputation, and was not bound to call witnesses. Stat. Ill., 1058, Sec. 37.

(G) This is not one of cases in which the court will interfere within the rule laid down in *C. B. & Q. R. R. Co.* v. *Frary et al.* 22 Ill., 36.

(H) The legacies not being invested still remained a part of the estate, and by adding them to the amount of the estate proper, only made a little over $30,000, which was the amount of moneys and credits the assessor found the whole estate to be worth; and even if they were not taxable, there was an ample remedy by application to the board of supervisors, and appeal to the state auditor. Stat. Ill., 1056, Sec. 33.

(I) If it was illegal to double the real estate, the judgment could be resisted in the county court or elsewhere, inasmuch as the illegality appeared upon the face of the books.

2. The court clearly erred in striking cross-bill from the files. Defendant had the right to file it. (Stat. Ill., 141, Sec. 24,) and the only ground on which the motion was sustained was, that he could not be compelled to make discovery of matters which would subject him to a *penalty*. And he thus refuses to give in his lists, under oath, refuses to state the value of his property in bill; seeks to avoid answering as to the same in the cross bill, and at the same time seeks to impeach the assessment, which he alleges to be unjust. The rule is not applicable in this case. The discovery will

not subject him to any penalty, but the evidence thus obtained might dismiss his bill.     That would be all the penalty.

3.    The merits upon the evidence, giving the answer the weight to which it is entitled, is clearly against defendant in error.    Plaintiff in error made but little effort by evidence, to show the value of his personal property, as it was difficult to do, and counsel felt confident that complainant would be compelled to answer cross-bill.

4.    The acts of the assessor are, in their very nature, and from the necessity of the case, *judicial*, and *not* ministerial acts, and therefore could not be reviewed or impeached in any manner, except that pointed out in the Revenue Laws, unless, *perhaps*, for fraud on the part of the assessor, and none is shown here.    To say that they are ministerial acts, would give rise to the very evil deprecated in *C. B. & Q. R. R. Co.* v. *Frary*, 22 Ill., 36.

Messrs. ARRINGTON & DENT for defendant in error, submitted the following points and authorities:

It is necessary to consider only two of the matters assigned as error:

1.    The overruling of the motion to dissolve the injunction.
2.    The rendition of a decree for the complainant, now the defendant.

These present a question as to the right of the complainant to have any relief; and in support of the affirmative, the following considerations are offered:

The court below decreed that he should be so far relieved from an assessment of taxes as not to be required to pay the same upon one hundred per cent. penalty or addition to the value of his property, and also so far as not to require him to pay taxes on certain bequests made by the will of his father.

8

When called upon by the assessor, he gave a list of his personal property to be assessed, except as to $427.50 of stock invested in a seminary of learning, which stock, as he told the assessor, he declined to list, not considering it taxable. Also, as executor of his father's estate, he listed moneys and credits to the amount of $2,700.

To these lists, the assessor made additions, by including said seminary stock, and adding $25,000 to the moneys and credits listed by Pulsifer, and by increasing the valuation of the moneys and credits of the estate of the elder Pulsifer to $27,000, and also by adding to the latter list certain specific bequests, amounting to $7,900; and then, under the allegation that the defendant in error had *refused* to list his personal property, the assessor doubled all the valuations as well of real as of personal property. This the assessor seems to have done July 6, 1861, according to his notice of that date to Pulsifer.

1. It was not right nor in conformity with law, for the assessor to assess the property of the defendant in error at double its real value.

*First,* It was for the assessor and not for the owner of the property to assess the value of the property. (Township Organization Law, Public Laws, 1861, pp. 241-2, section 7, of Article 16.) He had a right, to be sure, to get information thereof from Pulsifer; but there is no pretence that the latter refused such information. He declined to list the seminary stock for the reason before advanced; and as to his "moneys and credits," no inquiry as to the particular items of the same was made of him by the assessor, and, as the bill asserts, the valuation was a matter of opinion, about which persons might honestly differ.

*Second,* But if it was the duty of Pulsifer to set a value upon his moneys and credits, and the value was too low, then the remedy was pointed out by the 9th section of the act of Feb. 12, 1853, concerning the assessment of property, &c., (p. 1050

of Scates' Comp.; p. 940 of Purple's Comp.;) this section authorizing the assessor in such case to assess the property at its *true* value.

And if the declination to list the seminary stock was wrong, still it is not pretended that Pulsifer concealed any information in regard to it, or did more than to urge that it ought not to be assessed. This was a matter addressed to the judgment of the assessor, and the 30th section of the same act, (p. 1056 of Scates' Comp.; p. 945 of Purple's Comp.,) directed him how to proceed, if he needed information as to such stock, as it seems he did not.

*Third,* When the assessor made his additions and arbitrary increase of valuations, it was too late to do so. The law, p. 242 of Public Laws of 1861, sec. 8, required him to assess the value of the property before the *first day of July,* and to complete the assessment roll before the first Monday in that month; (Ib., sec. 11.) The latter time in that year, was the first day of the month. But he waited until the Saturday thereafter, the 6th of the month, before making these additions.

*Fourth,* If the legacies were taxable, they should have been assessed to the legatees. Pulsifer, as executor, was not bound to pay taxes on them. It was enough to charge him with taxes on the value of the property of the estate.

*Fifth,* There is no penalty for not listing lands; and the law does not declare that individual owners shall give the assessors lists of the same. They were to be assessed once in every two years; and according to the theory of the assessor, they, in this case, would have been charged at double their value for 1862, as well as for 1861.

*Sixth,* The additional assessments were arbitrary, and not based upon proper testimony. No witnesses were sworn. (Sec. 30 of same act, p. 1056 of Purple's Comp.) The assessor could have got all required information of Mr. Pulsifer, and could have had him sworn

2.    The allegation of the bill that the assessor acted from passion, malice or prejudice against the complainant is sustained by the evidence.

All the circumstances show that such was the case.    He seized the pretext of the seminary stock not being listed, and pretending to differ in judgment with Pulsifer as to that, but asking from him no information otherwise, talked with persons alleged in the bill to be unfriendly to the complainant, and on their unsworn statements, made the additions, and gave notice of them to Pulsifer, and to make sure of stamping the latter with infamy, wrote on the assessment of the personal property, that he had doubled the value of the property for *refusing to list the same*, and on the assessment of real property, opposite each tract, that he had assessed it at double its value, "*as a penalty for giving a false list.*"

3.    The complainant was not required to make any affidavit at the meeting of the assessor and town clerk.

*First*, Because the arbitrary action of the assessor, in doubling the valuations, could not be remedied at that meeting.

*Second*, The meeting being held July 19th, was not held in time.    It should have been held early as the 15th of July, —that is, within fifteen days after the first Monday of July, 1861.    Public Laws, 1061, p. 242.

*Third*, The assessor decided to double valuation if Pulsifer should make any affidavit as to what his property was worth; and the town clerk did not dissent.    And a witness said he did not think the board had anything to do with the doubling.    Hence the case was prejudged.

*Fourth*, When the supervisor arrived at the place of meeting, the office of the town clerk, where the meeting was

being held, was about to be closed, it being the usual time for closing the office in the evening.

4.    The answer did not aver that at the utmost stretch the property was worth more than the price fixed by the assessor, without the 100 per cent. penalty, and there was no evidence tending to show that the valuation which Pulsifer first put upon it was inadequate.    That valuation was presumably correct; and it was for the plaintiff in error to show that it was not, if he so believed.    The volunteers, of whom the assessor inquired, could readily have been summoned, if the assessor had chosen to enter upon the investigation.    The answer is not at all supported in this respect; and the court below did less for the complainant than the law entitled him to demand.

5.    It was in harmony with all the decisions of this court, and with general chancery law, to give relief to the complainant.    A penalty had fraudulently and unjustly been imposed; taxes had thus been wrongfully and illegally charged, without right, casting clouds upon the title to his real property; and an investigation, which could not be properly made in resisting a judgment for taxes, had become requisite.    An injunction bill was the most appropriate weapon for redress.    21 Ill., 610 ; 22 Ill., 169.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

In 1861, the assessor of Hennepin township, called upon Pulsifer, the defendant in error, to furnish him with lists of his personal property for taxation, and also of the personal property belonging to the estate of his deceased father, of which he was one of the executors.    Pulsifer furnished the lists, valuing his own personal property at $11,608, and that of the estate at $2,700.    The assessor, not being satisfied with these valuations, increased the former to $25,000, and the latter to $27,000, as the true estimated value, and then,

under section eight of the revenue law, doubled these amounts as a penalty. He also doubled the valuation of Pulsifer's real estate.   He also examined the will of the deceased Pulsifer, and finding that it provided for sundry bequests amounting to about $8,000, he doubled this sum, and added it to the amount already assessed against the estate. He gave Pulsifer notice of what he had done, and of the time and place of the meeting of the board for the correction of lists.

Pulsifer appeared at the meeting of the board, but refused to make an affidavit, as required by the thirty-second section of the revenue law, to the effect that his personal property did not exceed a certain sum, and in consequence of such refusal, the board did not reduce the assessments.   Pulsifer afterwards sued out an injunction to restrain the collection of the taxes on these assessments, and, on the final hearing, the Circuit Court relieved him of the penalties, and of the taxes on the legacies, but refused any relief as to the increased valuation.   The tax collector brings the case to this court.

So far as relates to the tax levied upon the personal property of the complainant, held by him in his individual right, he has not made a case entitling him to relief either in his bill or in his proofs.   The bill, being for an injunction, was necessarily verified by affidavit, and it nowhere contains an averment that the valuation of $25,000 fixed by the assessor, was over the actual value of the complainants personal property, and there is not the slightest attempt to show this by the evidence   The only averment in the bill upon this point, is as follows :

" That complainant did make such lists, and they were not false or fraudulent; because there was no complaint that he had omitted any taxable property in his lists, except said stocks, but that he had not valued his moneys and credits, and the moneys and credits of said estate, as high as the assessor did ; that valuations are matters of opinion, about which men equally honest differ."

This can only be regarded as evasive and frivolous. The complainant comes into court asking relief from what he alleges to be an excessive assessment. Yet how can he hope for the interference of the court, unless he is able to aver distinctly, and to show presumptively upon the hearing, that there has been such excess? Unless he can do this, what standing has he in court? The law gives the assessor the right to value personal property if dissatisfied with the value fixed by the owner. This assessor exercised that right. As an officer of the law, vested with an authority to a considerable extent discretionary, and acting within the scope of that authority, his action must be presumed to have been correct until the contrary is duly alleged, and so far proven as to repel the *prima facie* presumptions which attach to and protect official action performed within the scope of official authority. Yet this case, so far as it relates to the personal property of the complainant, proceeds in defiance of these familiar principles. And not only are the bill and proof fatally defective in this regard, but there is another circumstance in the case which furnishes a powerful reason why the court should refrain from interference on behalf of this complainant personally. The thirty-second section of the revenue law of 1853, provides that, on a certain day, "the assessor, town clerk and supervisor shall attend at the office of the town clerk for the purpose of receiving the assessment list, and on the application of any person considering himself aggrieved they shall review the assessment, and when the person objecting thereto shall make an affidavit that the value of his personal estate does not exceed a certain sum specified in such affidavit, the assessor shall reduce the assessment to the sum specified in such affidavit." Now this complainant appeared before the board — was informed of this law — was told that if he would make the affidavit, they would fix his assessment in conformity thereto, and, upon some frivolous pretext, he refused to make an affidavit, and the board, after waiting upon him a week, closed and returned the books. He had the means of redress in his own hands, if he had really been

aggrieved, and declined to adopt them. From his refusal to make an affidavit at that time, from the fact that in his sworn bill he was unable to approach more nearly to what his counsel must have known was a material averment than the evasive statement we have already quoted, and from the fact that he offered no evidence whatever on the hearing tending to show an excessive valuation, the inference is irresistible that the valuation was not too large, and in the face of all these facts, it is folly to expect the interposition of a Court of Equity.

While, however, in regard to the personal property owned by Pulsifer in his own right, the assessor seems to have only done his duty, he wholly transgressed his power in the residue of his action. He had no right whatever to double the assessment of the real estate.

Section eight of the revenue law of 1853, page 1050 of Scates' Statutes, provides that "if any person shall give a false and fraudulent list, or shall refuse to deliver to the assessor, when called on for that purpose, a list of his or her taxable property, as required by law, the assessor, as a penalty therefor, shall assess the property of such person at double its value." Now it is true, the fourth section requires persons to list both their real and personal estate, so far as the real estate is situated in the town where such persons reside. But it is the sixth section which requires persons " to make out, sign and deliver to the assessor, when required, a certified statement of all their personal property," etc., and the section goes on to specify, with great minuteness, and under fourteen different heads, what this list shall contain, it being wholly devoted to personal property. Then follows the section we have quoted, imposing a penalty for " a false list." Now this " false list " clearly refers to the list of personal property which the preceding section has just required to be made out by all persons " when called on for that purpose." And when the same section provides for doubling the assessment of the property of a person refusing to give in a "list," or giving in a "false list,"

can the law be reasonably supposed to refer to any other than that personal property whose listing has been required by the preceding section, and from a delinquency in regard to which,· has grown the penalty? The law authorizes the assessor, in cases of refusal to list, or of false listing, himself to list the property at double its value, as a penalty for the fraud sought to be practised upon the revenue in regard to that specific property.

. Besides it is the assessor himself who is to assess the value of real estate in the first instance. The thirty-ninth section of the act requires him to do this " from actual view, or from the best sources of information that can be obtained." It is the act of the assessor, not of the owner, and in this very case the assessor testifies that he himself fixed the value of the real estate in conjunction with the owner.

There is another very potent reason why real estate should not be doubled in valuation under this penal power. It often happens that real estate is listed in the name of persons who are not the actual owners. This is sometimes the result of inadvertence, lands being entered year after year, by the officers, in the same name, though they may have been repeatedly sold. Sometimes it proceeds from design, for the sake of perfecting a colorable title by the payment of taxes. Now if a person having a tax title, subject to redemption by minor heirs, has the land listed in his own name, and double taxes can be and are assessed upon it under this statute, the consequence is, that when the infant owners come to redeem, they find themselves subject to a penalty for an offence which they have never committed. They are required to pay double taxes upon their property because another person has attempted to defraud the revenue in regard to certain other property. We are of opinion that the law should receive no construction which would lead to consequences of this character. It is urged, however, that the second section of the revenue law, in giving certain definitions, prescribes among other things that the term " property," whenever used in this act, shall be held to include both real and personal property. When the term is used in a general sense, we should adopt

this rule of construction, as it is to such cases that it is manifestly intended to apply; but in an act of eighty-three sections, where the legislature is sometimes speaking of real, and sometimes of personal property, we must be permitted to determine, from the context, which is the kind of property referred to, without a merely arbitrary application of this rule. To hold that the term "property" *ex vi termini* means both realty and personalty wherever used in the statute, would involve us in hopeless confusion in its construction, and indeed abolish all distinctions between the two kinds of property.

The assessor also transgressed his power in adding the legacies to the valuation of the estate of John Pulsifer deceased. He had already changed the valuation from $2,700 to $27,000. He then examines the will, and finds certain legacies given thereby. He adds the legacies to the amount already assessed. This is merely taxing the same property twice over in the hands of the same person, and is not admissible.

Neither had the assessor the right to double the valuation of the property assessed to the estate of John Pulsifer. The difference between the eighth and ninth sections, in this respect, is very marked. While the latter authorizes the assessor to charge at its true value "any property" that has not been fairly assessed, the eighth section only authorizes *doubling* the true value of the property of persons who have sought to perpetrate a fraud. The language is, "if any person shall give a false or fraudulent list, * * the assessor, as a penalty therefor, shall assess the property of *such person* at double its value." The penalty is to be confined, as it ought to be, to the property "of such person." The fourth section requires persons to list not only their own property, but also that in regard to which they are clothed with a fiduciary character. A guardian is required to list the property of his wards. Suppose he returns a fraudulent list. Under the ninth section, the assessor can correct the list by charging the property at its true value, but he can not, under the eighth section, impose the penalty of doubling the true value, because the penalty is confined to the

property of persons who have sought to commit a fraud. It would be grossly unjust to impose a penalty on innocent heirs, because the guardian has made a false return, or to burden an estate with a double tax because the executor has been guilty of a like offence. It is no answer to say that the guardian and the executor can be made to refund the penalty to the wards or the distributees. The remedy would be often doubtful and always expensive, and even if it could always be made effective, it would be a violation of all principle, that the effect of a penal law should be made to fall primarily upon the property of innocent parties. We find nothing either in the letter or spirit of this statute requiring us to give it so unjust a construction.

The decree of the court below will be modified in conformity with these principles. The collector will be permitted to collect the tax upon the doubled value of the personal property assessed to the complainant in his individual right, and also the tax upon the $27,000 charged to the estate of John Pulsifer, without doubling it, and without adding the legacies thereto, and also the tax upon the value of the real estate as first assessed, without doubling it. The case is remanded for the purpose of having the decree thus amended.

*Decree reversed.*